## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
U.S. Department of Justice
Antitrust Division
450 Fifth Street, N.W., Suite 8000
Washington, DC 20530

                *Plaintiff*,

v.

INTUIT INC.
2700 Coast Avenue
Mountain View, CA 94043

and

CREDIT KARMA, INC.,
760 Market Street, Floor 2
San Francisco, CA 94102

                *Defendants*.

## COMPLAINT

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil antitrust action to prevent Intuit Inc. from acquiring Credit Karma, Inc.  The United States alleges as follows:

## I.   INTRODUCTION

1.      Each year, nearly 140 million individuals, families, and households around the country file U.S. federal and state income taxes.  The tens of millions of filers who choose a digital do-it-yourself ("DDIY") tax preparation product have some choice, but one product dominates this market: TurboTax.  Intuit, the maker of TurboTax, is by far the largest provider of

DDIY tax preparation products, with a 66% market share.  For more than a decade, Intuit's dominance has been nearly as certain as taxes themselves.

2.      Since 2008, Credit Karma has operated a popular personal finance platform that offers consumers a variety of free services, including credit monitoring and financial management.  When Credit Karma launched its own DDIY tax preparation product in 2017, it was the first meaningful DDIY tax preparation product entry in at least a decade.  Credit Karma's goal was clear: "Just like it did with credit scores in 2008, Credit Karma plans to change the tax preparation industry so people won't ever have to pay to do their taxes again."[1] Credit Karma quickly became a significant competitor to Intuit, despite its recent entry and relatively small market share, because Credit Karma has always offered its DDIY tax preparation product to consumers entirely for free.  This business model remains unique among DDIY tax preparation product providers.

3.      Through Credit Karma's personal finance platform, Credit Karma offers its more than 100 million members free personal finance tools, such as free credit scores and monitoring, and tailored, third-party financial offers, including credit card, personal loan, and refinancing opportunities.  Credit Karma is paid only by the third parties, and only when consumers take advantage of these customized offers.  Credit Karma can take the data gathered from tax filings, with the filers' consent, to improve Credit Karma's offerings to its members.  This, in turn, improves the likelihood that a consumer will take advantage of the offer.  This process enables Credit Karma to provide a DDIY tax preparation product for free regardless of the U.S. federal or state tax forms used and complexity of the tax return.

---

[1] https://www.creditkarma.com/ourstory.

4.      Thanks to its always-free strategy and enormous member base, Credit Karma became the fifth-largest DDIY tax provider after its first tax season and has grown significantly each year since, with over two million filers in 2020.  Credit Karma has projected additional growth in the future as its product continues to get traction, and as it continues to add features and expand the scope of its DDIY tax preparation product.

5.      Although as the new player in the market Credit Karma serves only 3% of customers, Intuit has recognized that Credit Karma represents its most disruptive competitor for DDIY tax preparation.  Credit Karma's always-free model poses a unique threat to Intuit because Intuit (and all other DDIY tax preparation providers) charges consumers for DDIY tax preparation products for anything beyond the most basic filings as well as often for state filings. Intuit relies on these fees for revenue.  For example, Intuit charges individual filers substantial fees to use TurboTax to claim itemized deductions, report investment income, or claim self-employed business expenses, among other complex tax filings.  The majority of TurboTax customers pay Intuit to use one of its DDIY tax preparation products.  By contrast, Credit Karma offers these same services for federal and state tax returns to individuals for free, and there is no up-charging for additional complexity.

6.      Over the last four tax seasons, Credit Karma has begun to erode Intuit's dominance in the market for the development, provision, operation, and support for DDIY tax preparation products.  Credit Karma has constrained Intuit's pricing, and has also limited Intuit's ability to degrade the quality and reduce the scope of the free version of TurboTax in order to drive customers to the paid versions.  Customer losses to Credit Karma have also represented lost revenue to Intuit because many switchers were purchasing TurboTax paid products, not using TurboTax free offerings.  Faced with stiff competition from Credit Karma and mounting losses of

paying customers to Credit Karma's always-free product, Intuit responded aggressively.  Intuit

lowered the prices and increased the quality of some of its products.  This head-to-head

competition with Credit Karma has benefitted many of the millions of Americans who use

TurboTax each year, constraining Intuit's ability to charge higher prices and leading Intuit to

increase the quality of its products.

7.     Intuit's proposed acquisition of Credit Karma will eliminate the growing threat

posed by Credit Karma and further cement TurboTax's dominance.  If the proposed transaction

proceeds in its current form, consumers are likely to pay higher prices, receive lower quality

products and services, and have less choice for DDIY tax preparation products.  To prevent those

harms, the Court should enjoin this unlawful transaction.

## II.     JURISDICTION AND VENUE

8.     The United States brings this action pursuant to Section 15 of the Clayton Act, 15

U.S.C. § 25, to prevent and restrain Defendants from violating Section 7 of the Clayton Act, 15

U.S.C. § 18.

9.     Defendants are engaged in, and their activities substantially affect, interstate

commerce.  Intuit and Credit Karma both provide DDIY tax preparation products that serve

federal and state tax filers throughout the United States.  The Court has subject matter

jurisdiction over this action pursuant to Section 15 of the Clayton Act, 15 U.S.C. § 25, and 28

U.S.C. §§ 1331, 1337(a), and 1345.

10.     Venue is proper under Section 12 of the Clayton Act, 15 U.S.C. § 22, and under

28 U.S.C. §§ 1391(b) and (c).

11.     This Court has personal jurisdiction over each Defendant.  Intuit and Credit

Karma both transact business and are found within the District of Columbia.

12.     Intuit and Credit Karma have each consented to personal jurisdiction and venue in this jurisdiction for purposes of this action.

### III.     DEFENDANTS AND THE PROPOSED TRANSACTION

13.     This case arises from Intuit's proposed acquisition of Credit Karma for approximately $7.1 billion, pursuant to an Agreement and Plan of Merger entered on February 24, 2020.

14.     Intuit is a large, public software company based in Mountain View, California that offers tax preparation, accounting, payroll, and personal finance solutions to individuals and small businesses.  Intuit offers DDIY tax preparation products under the TurboTax brand. Approximately 41 million individuals filed individual federal tax returns in 2020 using TurboTax.  Intuit, through its TurboTax business, is the largest provider of DDIY tax preparation products for U.S. federal and state tax returns.  In 2019, Intuit earned over $6.5 billion in revenue, including over $2.5 billion from sales of TurboTax products.

15.     Credit Karma is a privately-held technology company based in San Francisco, California that offers an online and mobile personal finance platform.  Credit Karma's platform provides individuals with access to free credit scores, credit monitoring, and DDIY tax preparation, among other products and services.  Credit Karma is home to more than one hundred million customers, and in any given month, over thirty-five million customers are actively engaged on the Credit Karma platform.  Credit Karma's DDIY tax preparation business, known as Credit Karma Tax, is the fifth-largest provider of DDIY tax preparation products for U.S. federal and state tax returns.  Approximately two million individuals filed U.S. federal tax returns with Credit Karma Tax in 2020.

## IV.    THE RELEVANT MARKET

### A.  Relevant Product Market

16.    Intuit and Credit Karma compete to develop, provide, operate, and support DDIY tax preparation products that help individuals file U.S. federal and state tax returns ("DDIY tax preparation products") to millions of Americans.  DDIY tax preparation products enable individuals to prepare their own U.S. federal and state tax returns on the provider's website or mobile application or using the provider's software installed on a personal computer.  The development, provision, operation, and support of DDIY tax preparation products is a relevant product market and line of commerce under Section 7 of the Clayton Act, 15 U.S.C. § 18.

17.    A hypothetical monopolist would impose at least a small but significant and non-transitory increase in the price of DDIY tax preparation products.  Such a price increase for these products would not be defeated by substitution to alternative products.  Other methods of preparing individual U.S. federal or state income tax returns are not close substitutes for DDIY tax preparation products because those methods of tax preparation do not offer comparable functionality or are less convenient, more cumbersome, or more expensive.  For example, hiring an accountant—*i.e.*, "assisted tax preparation"—is substantially more expensive and less convenient than using DDIY tax preparation products.  Similarly, completing U.S. federal and state tax returns manually using the "pen-and-paper" method is a substantially more tedious and error-prone process and thus less efficient than using DDIY tax preparation products.

### B.  Relevant Geographic Market

18.    The DDIY tax preparation products that Intuit and Credit Karma offer assist individuals with filing their U.S. federal and state income tax returns.  Customers that are required to file tax returns in jurisdictions outside of the United States cannot use the DDIY tax

preparation products at issue for those purposes.  Similarly, DDIY tax preparation products that have been designed to assist individuals with filing tax returns in jurisdictions outside of the United States cannot be used by customers to prepare U.S. federal and state tax returns.  Both customers and suppliers of DDIY tax preparation products predominantly are located within the United States.  However, because many DDIY tax preparation products are provided over the internet, there do not appear to be any physical restrictions on the location of suppliers or customers—that is, any consumer who is required to file U.S. taxes can generally choose between the same DDIY tax preparation products, regardless of whether the customer or DDIY product supplier is physically located inside the United States.  Therefore, a worldwide market is a relevant geographic market within the meaning of Section 7 of the Clayton Act, 15 U.S.C. § 18 for the purposes of analyzing this transaction.

## V.  INTUIT'S ACQUISITION OF CREDIT KARMA IS LIKELY TO RESULT IN ANTICOMPETIVE EFFECTS

### A.  The Transaction is Presumed Likely to Enhance Intuit's Market Power and Substantially Less Competition

19.     The relevant market is highly concentrated and would become significantly more concentrated as a result of the proposed transaction.  The more concentrated a market and the more a transaction increases concentration in that market, the more likely it is that the transaction will reduce competition.  Concentration is typically measured by market shares and by the well-recognized Herfindahl–Hirschman Index (HHI).  If the post-transaction HHI would be more than 2,500 and the change in HHI more than 200, the transaction is presumed likely to enhance market power and substantially lessen competition. *See*, *e.g.*, *United States v. Anthem, Inc.*, 855 F.3d 345, 349 (D.C. Cir. 2017).

20.     In 2020, approximately 41 million individuals filed a federal tax return using

Intuit's TurboTax, accounting for about 66% of the total market for DDIY tax preparation products. During the same time period, approximately two million individuals filed a federal tax return using Credit Karma's DDIY tax preparation product, accounting for about 3% of the total market. H&R Block, the second-largest provider of DDIY tax preparation products, has about a 15% market share. The post-transaction HHI would be over 5,000, with an increase in excess of 400. Given the high concentration level and increases in concentration in the market for DDIY tax preparation products, the proposed acquisition presumptively violates Section 7 of the Clayton Act.

21.     These concentration measures understate the likely anticompetitive effects of the transaction. Because Credit Karma is the only competitor that provides DDIY tax preparation products for free to consumers regardless of the complexity of the federal tax return or state tax return required, it plays a uniquely disruptive role in the market. Further, Credit Karma is poised to continue with substantial growth in the near- and long-term.

### B.  The Transaction Would Eliminate Head-To-Head Competition Between Intuit and Credit Karma and an Important Competitive Constraint

22.     Intuit's acquisition of Credit Karma would remove a significant competitor that has been an important competitive constraint on Intuit. Intuit's TurboTax offers consumers a limited free option for simple individual federal tax filings, but it charges consumers fees for more complicated federal tax filings, including filings with itemized deductions, investment income, and self-employed income and expenses. Intuit also charges consumers fees for their state tax filings. Unlike Intuit, Credit Karma does not charge consumers for any of the products and services that it offers. Instead, Credit Karma uses the data that it collects from users to create targeted offers on financial products and services and collects a commission from financial institutions when users accept these offers. In addition, Credit Karma has an existing customer

base of over a hundred million users that it can cost-effectively target for DDIY tax preparation products.

23.     Intuit and Credit Karma compete head-to-head to provide DDIY tax preparation products to tens of millions of Americans.  This head-to-head competition has led to lower prices and increased quality for DDIY tax preparation products.  In response to competition from Credit Karma, Intuit has strategically lowered prices on some of its DDIY tax preparation products, such as by extending promotions for free state tax filing with TurboTax (up to a $50 value).  In addition, to compete with Credit Karma, Intuit has expanded the scope and quality of services it offers to TurboTax users at no additional cost to consumers, including by granting customers free access to their prior year's tax returns.

24.     Moreover, without this merger, competition between Intuit and Credit Karma would intensify as Credit Karma continues to grow and erode Intuit's substantial base of TurboTax customers.  Credit Karma has consistently and significantly grown its market share year over year and is forecasting continued significant growth over the next few years.

25.     By eliminating head-to-head competition between Intuit and Credit Karma, the proposed acquisition in its current form would result in higher prices, lower quality, and reduced choice.  Thus, the merger would substantially lessen competition and harm millions of consumers in the development, provision, operation, and support of DDIY tax preparation products.

## VI.     ABSENCE OF COUNTERVAILING FACTORS

26.     New entry and expansion by competitors likely will not be timely and sufficient in scope to prevent the acquisition's likely anticompetitive effects.  Apart from Credit Karma, no other companies have successfully entered the market for the development, provision, operation,

and support of DDIY tax preparation products in over a decade.  As Intuit's and Credit Karma's executives have recognized, barriers to entry are high.  Barriers to entry and expansion include (i) large sunk costs and significant other expenditures to develop easy-to-use, robust DDIY tax preparation products; (ii) significant time and expense to build a trusted brand; and (iii) substantial marketing dollars and effort to promote the DDIY tax preparation products and attract customers.

27.     The proposed acquisition is unlikely to generate verifiable, merger-specific efficiencies sufficient to reverse or outweigh the anticompetitive effects that are likely to occur.

## VII.    VIOLATION ALLEGED

28.     The United States hereby incorporates the allegations of paragraphs 1 through 27 above as if set forth fully herein.

29.     Intuit's proposed acquisition of Credit Karma is likely to substantially lessen competition in the relevant market, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

30.     Unless enjoined, the proposed acquisition would likely have the following anticompetitive effects, among others:

    (a)     eliminate present and future competition between Intuit and Credit Karma in the market for the development, provision, operation, and support of DDIY tax preparation products;

    (b)     cause prices for DDIY tax preparation products to be higher than they would be otherwise;

    (c)     lessen innovation; and

    (d)     reduce quality, service, and choice for Americans that file U.S. federal and state tax returns.

## VIII.  REQUEST FOR RELIEF

31.  The United States requests that the Court:

(a)  adjudge Intuit's acquisition of Credit Karma to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

(b)  permanently enjoin Defendants from consummating Intuit's proposed acquisition of Credit Karma or from entering into or carrying out any other agreement, understanding, or plan by which the assets or businesses of Intuit and Credit Karma would be combined;

(c)  award the United States its costs of this action; and

(d)  grant the United States such other relief the Court deems just and proper.

Dated: November 25, 2020

Respectfully submitted,


**FOR PLAINTIFF UNITED STATES:**


_/s/_ Makan Delrahim
MAKAN DELRAHIM (D.C. #457795)
Assistant Attorney General for Antitrust

_/s/_ Michael F. Murray
MICHAEL F. MURRAY (D.C. #1001680)
Deputy Assistant Attorney General

_/s/_ Kathleen S. O'Neill
KATHLEEN S. O'NEILL
Senior Director of Investigations & Litigation

_/s/_ Robert A. Lepore
ROBERT A. LEPORE
Chief
Transportation, Energy & Agriculture Section

_/s/_ Katherine A. Celeste
KATHERINE A. CELESTE
Assistant Chief
Transportation, Energy & Agriculture Section

_/s/_ Brian Hanna
BRIAN HANNA*
MICHELE B. CANO
J. RICHARD DOIDGE
RACHEL A. FLIPSE
JOHN A. HOLLER
MICHELLE LIVINGSTON (D.C. #461269)
MICHAEL T. NASH
SETH J. WIENER (D.C. #995383)

Attorneys for the United States

U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Tel: (202) 598-8360
Fax: (202) 616-2441
Email: brian.hanna2@usdoj.gov

*LEAD ATTORNEY TO BE NOTICED